# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW R. VARA[1], United States Trustee, Region 9, | ) ) ) ) | CASE NO. 5:20-cv-1209 |
| PLAINTIFF-APPELLEE, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) | MEMORANDUM OPINION |
| STEVEN P. MCDONALD, | ) ) ) | |
| DEFENDANT-APPELLANT. | ) | |

This matter is before the Court on an appeal filed by defendant-appellant Steven P. McDonald ("Debtor") from an order of the U.S. Bankruptcy Court for the Northern District of Ohio granting summary judgment in favor of plaintiff-appellee Andrew R. Vara ("Trustee") and denying the Debtor discharge under 11 U.S.C. § 727(a)(5). As the bankruptcy court's order granting summary judgment is a final appealable order, the Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(c)(1)(B). *See id.*; *Gen. Motors Acceptance Corp. v. Flynn* (*In re Midway Motor Sales, Inc.*), 407 B.R. 442 (Table), 2009 WL 1940719, at *1 (6th Cir. July 6, 2009) ("An order granting summary judgment is a final order.") For the reasons that follow, the bankruptcy court's decision is affirmed.

## I. BACKGROUND

Debtor has appealed the April 17, 2020 decision of the bankruptcy court granting the Trustee's motion for summary judgment. *McDermott v. McDonald* (*In re McDonald*), 614 B.R.

---

[1] Andrew Vara (improperly designated on the Court's docket as "Varga") replaced Daniel M. McDermott as U.S. Trustee for Region 9 effective December 22, 2019. *See* United States Department of Justice, Office of Public Affairs, December 16, 2019 Press Release (https://www.justice.gov/opa/pr/andrew-r-vara-appointed-us-trustee-ohio-and-michigan, last visited Apr. 19, 2021).

801 (Bankr. N.D. Ohio 2020). As set forth in the bankruptcy court's memorandum opinion, on November 1, 2015, Debtor commenced the bankruptcy case underlying this adversary proceeding by filing a voluntary petition under Chapter 7. Prior to filing for bankruptcy, Debtor had served as a loan officer and a vice president of Hometown Bank. He also had previous experience as a financial institutions examiner for the Ohio Department of Commerce and as a loan officer for the Portage Community Bank.

On June 20, 2016, the Trustee initiated an adversary proceeding seeking denial of Debtor's discharge. In its summary judgment motion, the Trustee sought judgment as a matter of law on two separate bases: (1) that Debtor knowingly and fraudulently made false oaths regarding the dissipation of his assets, in violation of 11 U.S.C. § 727(a)(4)(A), and (2) that Debtor failed to satisfactorily explain the dissipation of certain cash assets, in violation of 11 U.S.C. § 727(a)(5).

The focal point of the adversary proceeding concerned two financial transactions: (1) a February 2010 loan for $165,000.00 extended to Debtor and his wife by a customer of Hometown Bank (hereinafter "Lally Loan"), and (2) a $225,000.00 line of credit Debtor duped another Hometown customer into unwittingly extending to him in January 2011 (hereinafter "Loftin Line of Credit") to cover Debtor's gambling debts.[2]

---

[2] Though the Lally Loan was executed with the customer's knowledge, there is no dispute that the transaction, which involved a current commercial customer of Hometown Bank, violated the bank's policies. (Doc. No. 6-4, Ex. F (Affidavit of Michael Lewis ["Lewis Aff."]) ¶ 8.) Further, the bankruptcy court found, and there is no dispute on appeal, that the Loftin Line of Credit was issued without the customer's knowledge in what was characterized in deposition testimony as a "money laundering scheme." *McDonald*, 614 B.R. at 808 (citing record). While Debtor initially sought the protection of the Fifth Amendment as to this transaction, "he later confessed to the fraudulent nature of the Loftin Line of Credit" and his role in procuring it. *Id*. Debtor was charged with and eventually pled guilty to bank fraud and was sentenced to 33 months in prison. (Doc. No. 5 (Brief of Debtor ["Debtor Br."]) at 102. With the exception of the bankruptcy court's published opinion, all page numbers are to the page identification number generated by the Court's electronic docketing system.)

With respect to the § 727(a)(4)(A) claim (Count I), the bankruptcy court found that genuine issues of material fact precluded summary judgment because proof of Debtor's intent was a required element under that statutory provision. *McDonald*, 614 B.R. at 811. Though it found Debtor's explanation of the dissipation of the proceeds from the two transactions to be inconsistent and vague, it determined that Debtor's reliance on his gambling addiction as the basis for his failure to fully recall the disposition of the proceeds left "room for plausible inferences of honest intent" on Debtor's part. *Id*.

With respect to the § 727(a)(5) claim (Count II), however, the bankruptcy court found that the Trustee's evidence demonstrated beyond dispute that a denial of discharge was appropriate. Recognizing that § 727(a)(5) contained no wrongful intent element, the bankruptcy court found that the explanation offered by Debtor—who the court noted was well-educated and experienced in banking transactions—as to the dissipation of the proceeds from the loan and credit line was vague, speculative, and entirely unsatisfactory. *Id*. at 816–18. In reaching this conclusion, the bankruptcy court found that Debtor failed to account in any way for $76,761.10 of the original Lally Loan amount,[3] (*id*. at 807), and that Debtor was unable to account for

---

[3] Specifically, the bankruptcy court found that Debtor only produced three of the fifteen checks he used to withdraw loan proceeds from his checking account leaving $59,561.10 of the $65,241.41 check-related withdrawn funds unexplained. *McDonald*, 614 B.R. at 807. (*See* Doc. No. 6-4, Ex. G (Affidavit of John Weaver ["Weaver Aff."]) ¶¶ 13–16.) The bankruptcy court also determined that Debtor failed to provide any explanation for two significant cash withdrawals of $17,200.00 and $2,000.00. *McDonald*, 614 B.R. at 807 (citing Debtor's 2004 examination). On appeal, Debtor posits that the Trustee is estopped from challenging his failure to produce the missing checks. (Debtor Br. at 114–15, citing bankruptcy record.) Debtor's argument is factually and legally without merit. It is well settled that the government "may not be estopped on the same terms as any other litigant." *Premo v. United States*, 599 F.3d 540, 547 (6th Cir. 2010) (quotation marks and citation omitted). Debtor has failed to meet his heavy burden of demonstrating affirmative misconduct on the part of the government that it intentionally or recklessly misled him necessary to warrant estoppel. *Id*. Instead, Debtor relies on the fact that the trustee closed Debtor's examination by indicating "[t]his concludes the deposition [of Debtor.] . . . And the only thing I have outstanding is the request for [certain tax returns.] And although, you know, we're at the end of the discovery period, the fact is these kind of financial documents are just standard. So, I don't really feel like we have any issue." (Debtor Br. at 115, citing Doc. No. 6-4 (Deposition of Steven McDonald) at 466.) By closing the deposition in this way, the

approximately $128,000.00 of the $225,000.00 line of credit from the Loftin Line of Credit[4] (*id.* at 809). Overall, the bankruptcy court found that Debtor failed to account for more than two-thirds of the combined $390,000.00 in proceeds from the two transactions.

According to the bankruptcy court, these deficiencies rendered Debtor's explanations wholly unsatisfactory under § 727(a)(5) as they were vague and largely unsubstantiated or verified, leaving the court and the Trustee to speculate as to what occurred with most of the proceeds. In announcing its decision, the bankruptcy court stressed that its conclusion was not influenced by the illegality of the debtor's activities, noting that "[t]he denial of the Debtor's discharge in this case is about accounting, not morality judgment." *McDonald*, 614 B.R. at 818. The bankruptcy court underscored that "[r]egardless of the propriety of entering into self-dealing loan agreements or opening a line of credit under another person's name in pursuit of paying off gambling debts, it is the Debtor's unacceptably vague accounting for the missing cash provided . . . over the course of this case and adversary proceeding that is not legally satisfactory under Section 727(a)(5) and results in the denial of discharge." *Id*.

## II. STANDARD OF REVIEW

Under Bankr. R. 7056, Fed. R. Civ. P. 56 governs motions for summary judgment in adversary proceedings in bankruptcy court. Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment

---

Trustee certainly did not relieve Debtor of his obligation to fully comply with § 727(a)(5) or suggest that the explanations he gave to date (including in his deposition) were legally adequate.

[4] The record showed that in February 2011, Debtor wired $100,000.00 from the Loftin Line of Credit to a brokerage account, but by June 2011 the account contained only $200.93. When asked about the $99,799.07 balance in his deposition, Debtor testified that he did not have any recollection of where the funds had gone. He also provided no explanation as to the whereabouts of $28,000 that was never deposited into the account. *McDonald*, 614 B.R. at 809 (citing Debtor's 2004 examination).

as a matter of law." Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the evidence, all facts, and any inferences that may be drawn from the facts, must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). To prevail, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Under this standard, a bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed *de novo*. *See Behlke v. Eisen* (*In re Behlke*), 358 F.3d 429, 433 (6th Cir. 2004). A finding of fact is clearly erroneous "'when although there is evidence to support it, the reviewing Court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 2d 746 (1948)). In a *de novo* review, the Court determines the legal issues independent of the trial court's determination. *U.S. Trustee v. Eggleston Works Loudspeaker Co.* (*In re Eggleston Works Loudspeaker Co.*), 253 B.R. 519, 521 (B.A.P. 6th Cir. 2000). "No deference is given to the bankruptcy court's conclusions of

5

law." *Select Portfolio Servs., Inc. v. Burden* (*In re Trujillo*), 378 B.R. 526, 529 (B.A.P. 6th Cir. 2007) (citation omitted).

### III. DISCUSSION

Under 11 U.S.C. § 727(a)(5), a bankruptcy court may deny the discharge of a debt if "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities[.]" 11 U.S.C. § 727(a)(5). Section 727(a)(5) contemplates a burden-shifting framework where the party objecting to the discharge has the initial burden to identify assets which the debtor at one time owned and claims, in his schedules, to no longer possess. *See PNC Bank v. Buzzelli* (*In re Buzzelli*), 246 B.R. 75, 116 (Bankr. W.D. Pa. 2000).

Once this initial burden is met, the burden shifts to the debtor to offer a satisfactory explanation of the loss of assets. *Id*. The benchmark for a § 727(a)(5) satisfactory explanation is reasonableness. *Lacy Wholesale & Main Factors v. Bell* (*In re Bell*), 156 B.R. 604, 605 (Bankr. E.D. Ark. 1993). "To be satisfactory, the explanation must demonstrate the debtor has exhibited good faith in conducting his affairs and explaining the loss of assets." *Bay State Milling Co. v. Martin* (*In re Martin*), 141 B.R. 986, 999 (Bankr. N.D. Ill. 1992). Although the explanation does not necessarily need to be comprehensive, it must meet two criteria in order to be deemed "satisfactory." *Subhash Saluja v. Mantra* (*In re Mantra*), 314 B.R. 723, 730 (Bankr. N.D. Ill. 2004); *Clean Cut Tree Service Inc. v. Costello* (*In re Costello*), 299 B.R. 882, 901 (Bankr. N.D. Ill. 2003); *Banner Oil Co. v. Bryson* (*In re Bryson*), 187 B.R. 939, 956 (Bankr N.D. Ill. 1995). First, it must be supported by at least some documentation. *Costello*, 299 B.R. at 901. Second, this documentation must be sufficient to eliminate the need for the court to speculate as to what happened to all the assets. *See Baker v. Reed* (*In re Reed*), 310 B.R. 363, 370 (Bankr. N.D. Ohio

6

2004) (the information provided must be sufficient for the trustee or a creditor to properly investigate the circumstances surrounding the loss or deficiency).

In making its determination, the court may consider such things as the nature of the debtor's business, as well as his education and his financial and business sophistication. *See G. & J Invs. v. Zell* (*In re Zell*), 108 B.R. 627, 629 (Bankr. S.D. Ohio 1989).

### A. Disputed Assets were not Too Remote

As he did before the bankruptcy court, Debtor argues on appeal that the 2010 Lally Loan and the 2011 Loftin Line of Credit were too remote in time from when the petition was filed to require him to provide a satisfactory explanation under § 727(a)(5). (Debtor Br. 105.) He notes that § 727(a)(5) contains a "look back period," and while he acknowledges that the statute does not limit this look back period, "[a] focus on the two years prior to the bankruptcy filing is common." (*Id*. at 106, quotation marks and citations omitted.) He suggests that the bankruptcy court erred in looking back to transactions that occurred between 4 ½ and 5 ½ years prior to the filing of the bankruptcy petition.

The Court disagrees. Section 727(a)(5) contains no limitation on the bankruptcy court's inquiry period. *Shamschovich v. Racer* (*In re Racer*), 580 B.R. 45, 55 (Bankr. E.D.N.Y. 2018) (citation omitted). "Although a focus on the two years prior to the debtor's petition filing may be common, inquires extending beyond two years certainly occur when warranted." *Id*. (citing *First Commercial Fin. Grp., Inc. v. Hermanson* (*In re Hermanson*), 273 B.R. 538, 552 (Bankr. N.D. Ill. 2002)). "The existence of 'lost assets of substantial value relative to debtors' liabilities' often warrants the extension of such two-year period." *Id*. (quoting *Crocker v. Stiff* (*In re Stiff*), 512 B.R. 893, 898 (Bankr. E.D. Ky 2014)). "As § 727(a)(5) is, on its face, concerned with lost assets

7

that would help 'meet the debtor's liabilities,' it is appropriate to deny a discharge where the debtor cannot explain the loss of assets that would go a long way towards meeting creditor's demands." *Stiff*, 512 B.R. at 901 (permitting inquiry of three to ten years prior to bankruptcy case due to unaccounted cash withdrawals of $194,000); *see, e.g., In re D'Agnese*, 86 F.3d 732, 734 (7th Cir. 1996) (inquiry nine years pre-petition permitted); *Racer*, 580 B.R. at 55 (holding "unexplained loss of $1.5 million obtained during the period four to seven years prior to the bankruptcy justifies the application of § 727(a)(5)").

Here, the bankruptcy court properly found that the $390,000.00 in loans and fraudulent credit represented a large sum. Of this amount, more than $250,000.00 (of which approximately $176,560.17 was the focus of the Trustee's motion) was either "transferred in specific, but unexplained, transactions or otherwise dissipated without any documentation or explanation before the Debtor's case was filed." *McDonald*, 614 B.R. at 815. Further, the bankruptcy court reasoned that "because the [proceeds from the loan] were cash and the fact that as much as $75,000 may have disappeared more recently than 4 ½ years before the Debtor's bankruptcy filing, the Court may reasonably presume that the dissipation of the cash may have continued up to the petition date itself."[5] *Id*.

---

[5] Debtor takes issues with the bankruptcy court's choice of language here, suggesting that the "court improperly weighed the evidence *against* [Debtor], the non-movant, when it determined that because the proceeds '*may* have disappeared more recently than 4 ½ years before Debtor's bankruptcy filing, the Court *may reasonably presume* that the dissipation of the cash may have continued up to the petition date itself.'" (Debtor Br. at 106–07, emphasis supplied by Debtor.) Debtor has taken this text out of context. When considered with the surrounding language, it is clear that the bankruptcy court was merely acknowledging case law that explains that where the lost funds are "not immediately dissipated" but "spent on a continual basis," they should be "viewed as a continuum leading up to the filing of the Debtor's bankruptcy." *Reed*, 310 B.R. at 370. Because Debtor failed to provide an account of the dissipation of these funds, it remains true that while the loan was issued 4 ½ years pre-petition, it is possible that these funds were exhausted more recently. It is Debtor's lack of a satisfactory explanation that left the bankruptcy court to speculate as to their disposition. *See id*. Similarly, Debtor takes out of context the bankruptcy court's observation that the Debtor's "own testimony reveals an unwillingness to come forward in good faith and explain satisfactorily what hundreds of thousands of dollars derived from the Lally Loan and Loftin Line of Credit were

The Court agrees with the bankruptcy court that, given the substantial amount of the assets relative to the Debtor's other financial affairs, there is "ample authority to apply [§ 727(a)(5)] to the Debtor's discharge based on the facts of this case." *Id*. at 816.

### B. Debtor's Explanation was not Satisfactory

Debtor further argues that even if the Lally Loan and Loftin Line of Credit were not too remote in time for consideration by the bankruptcy court, he provided an adequate explanation as to these assets under § 727(a)(5), "particularly given the length of time that had passed since their acquisition and loss." (Debtor Br. at 111.) With respect to the Lally Loan, he maintains that it was sufficient for him to explain that some unsubstantiated portion of the funds was lost to failed "day-trading" efforts and that he simply did not recall what happened to the remaining funds. (*Id*. at 113, citing record.) He insists that it was enough that he answered "truthfully that after six years, he did not" have a "good recollection of what happened with the remaining funds[.]" (*Id*., citing record.)

"Even though a satisfactory explanation must be convincing about the lack of concealment, the focus of the inquiry is not exclusively on the subjective nature or honesty of the debtor's explanation, but is also on the objective adequacy of such explanation." *Structured Asset Servs., LLC v. Self* (*In re Self*), 325 B.R. 224, 251 (Bankr. N.D. Ill. 2005) (citing *D'Agnese*, 86 F.3d at 735); *Hermanson*, 273 B.R. at 546 (noting that an explanation is not satisfactory

---

used for[,]" as the language immediately preceding it clearly demonstrated that the bankruptcy court was properly relying on the fact that Debtor—an individual who was "well-educated and experienced in banking transactions"—was not permitted to completely fail to explain the loss of hundreds of thousands of dollars. *McDonald*, 614 B.R. at 816; *see Zell*, 108 B.R. at 629.

merely because it is offered in good faith). The Court agrees with the bankruptcy court that Debtor's vague and indefinite statements about "day-trading" losses, coupled with a failure to recall what transpired with the balance of the funds, did not eliminate the need for the bankruptcy court to speculate as to what happened to the money.

As for the Loftin Line of Credit, Debtor notes that he testified that a significant amount of these funds were paid to James Mehallis, who then issued a check back to him, and that, although he "did not fully remember what happened with the check," the proceeds were "likely" deposited in Debtor's Ameritrade account and used to pay off other lines of credit, satisfy existing debts, and cover daily living expenditures. (Debtor Br. at 117–18, citing record.) At worst, he claims this explanation created genuine issues of material fact that precluded summary judgment. But Debtor's suggestion of a possible disposition of the disputed assets was insufficient as a matter of law to generate a disputed material fact for trial. *See also Forbes v. Dixon* (*In re Dixon*), 884 F.2d 578 (Table), 1989 WL 100068, at *1 (6th Cir. Aug. 30, 1989) ("Since Dixon failed to explain the use of the $97,000, except by a vague statement that it must have been used to pay off existing debts, the bankruptcy court which was affirmed by the district court properly denied Dixon's discharge from bankruptcy pursuant to 11 U.S.C. § 727(a)(5)."); *see, e.g., Blackwell Oil Co. Inc. v. Potts* (*In re Potts*), 501 B.R. 711, 726 (Bankr. D. Colo. 2013) (debtor's testimony that the missing cash "probably went to pay for salaries", without corroboration, was insufficient under § 727(a)(5)); *McVay v. Phouminh* (*In re Phouminh*), 339 B.R. 231, 248 (Bankr. D. Colo. 2005) (noting that "[a]n explanation of the debtor's circumstances in general terms that is merely suggestive of reasons that assets became depleted falls short of the mark").

The Court is in agreement with the findings and the conclusion of the bankruptcy court that Debtor's explanations as to the dissipation of proceeds from the Lally Loan and Loftin Line of Credit were legally unsatisfactory under § 727(a)(5), especially given the Debtor's level of business sophistication and familiarity with banking transactions and recordkeeping.[6] *See Miller v. Bauer* (*In re Bauer*), 128 F. App'x 467, 468–69 (6th Cir. 2005); *Zell*, 108 B.R. at 629. The undisputed record necessitated a denial of the discharge under § 727(a)(5) due to Debtor's "unacceptably vague accounting" of the missing assets, and Debtor failed to identify any genuine issues of material fact that would have entitled him to a trial. Moreover, the Court finds no record support for Debtor's suggestion that the bankruptcy court improperly relied upon the illegality of his activities as the basis for denying discharge. As the bankruptcy court made clear, the denial was about an "accounting," and not a "morality judgment."

### IV. CONCLUSION

For the foregoing reasons, the order of the bankruptcy court granting the Trustee's motion for summary judgment and denying Debtor a discharge is affirmed.

**IT IS SO ORDERED**.

Dated: June 28, 2021

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[6] The Court notes that Debtor has failed to identify a single factual finding of the bankruptcy court that was clearly erroneous, and the Court's review of the record did not uncover any.